IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IVAN DeHAVEN, | ) | CASE NO. 1:12 CV 2859 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Ivan DeHaven under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying his applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## B.    Background facts and decision of the Administrative Law Judge ("ALJ")

DeHaven, who was 52 years old at the time of the hearing,[11] has completed high school along with some additional technical training, and served in the Marine Corps.[12] He has worked as a construction laborer, janitor, and trash collector.[13] Hehas also been incarcerated for cocaine possession,[14] although he asserts that he has not used drugs since

---

[6] ECF # 13.

[7] ECF # 22 (Commissioner's brief); ECF # 20 (DeHaven's brief), ECF # 24 (DeHaven's reply brief).

[8] ECF # 22-1 (Commissioner's charts); ECF # 21 (DeHaven's charts).

[9] ECF # 12 (DeHaven's fact sheet).

[10] ECF # 27.

[11] *See*, Transcript ("Tr.") at 21.

[12] *Id.* at 1183.

[13] *Id.* at 21.

[14] *Id.* at 1175.

2006.[15] Notwithstanding his asymptomatic HIV status, osteoarthritis, and difficulty in dealing with others,[16] he has had a long term girlfriend[17] and is largely able to take care of himself.[18]

The ALJ, whose decision became the final decision of the Commissioner, found that DeHaven had the following severe impairments: asymptomatic HIV infection, osteoarthrosis and allied disorders, and anti-social personality disorder.[19]

After concluding that the relevant impairments did not meet or equal a listing,[20] the ALJ made the following finding regarding DeHaven's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lift/carry (including upward puffing) at the medium exertional level, stand/walk/sit (with normal breaks) for six hours out of an eight-hour workday, unlimited push/pull (including hand/foot controls) within the exertional limitations, occasional climbing of ladders/ropes/scaffolds, occasional kneeling or crouching, no manipulative, visual, communicative, or environmental limitations, able to follow instructions and deal with routine changes which are easily explained, difficulty dealing with the public and accepting close supervision, but is able to relate superficially to coworkers and supervisors, and would perform best in a position which allows working primarily alone.[21]

---

[15] *Id.* at 43.

[16] *Id.* at 18.

[17] *Id.* at 20.

[18] *Id.* at 19.

[19] *Id.* at 15.

[20] *Id.* at 16.

[21] *Id.* at 17.

Based on that RFC, and the testimony of a vocational expert ("VE"), the ALJ found DeHaven capable of some of his past relevant work as a janitor and as a trash collector but not as a construction laborer.[22] Alternatively, the ALJ determined that a significant number of jobs existed locally and nationally that DeHaven could perform with his RFC.[23] He concluded, therefore, that DeHaven was not under a disability.[24]

## C.    Issues on judicial review and disposition

DeHaven asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, DeHaven presents three issues for decision:

- The ALJ found that DeHaven had the exertional capacity for medium work. This finding contradicted the opinions of acceptable medical sources that DeHaven could perform no more than light work. No acceptable medical source opined capability for medium work. Does the ALJ's finding of capability for medium work and his rejection of acceptable medical source opinions of a limitation to less than medium work have the support of substantial evidence?

- In adopting mental limitations in the RFC, the ALJ gave more weight to the opinion of a state agency reviewing psychologist but only less or some weight to the opinions of a treating psychologist and treating psychiatrist. Does the ALJ's analysis of and articulation regarding these medical source opinions have the support of substantial evidence?

- The ALJ found at step three that DeHaven had moderate difficulties with concentration, persistence, or pace. The ALJ did not, however, include in the RFC any limitations related to stress or production

---

[22] *Id.* at 21.

[23] *Id.* at 21-22.

[24] *Id.* at 22.

-4-

quotas. Did the step three finding and the medical evidence warrant the inclusion of greater limitations in the RFC addressed to difficulties with concentration, persistence, or pace?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded for further proceedings.

## Analysis

### A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-5-

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

---

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[28] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

---

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on

---

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[45] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46] *Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[49] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[42] *Id.*

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[45] *Id.* at 375-76.

[46] *Rogers,* 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[50] These factors are expressly set

out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give

the treating source's opinion controlling weight will the analysis proceed to what weight the

opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii),

(3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating

physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into

one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned

the opinion of the treating physician little weight and explained that finding by the secondary

criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

[54] *Id.*

[55] *Id.*

and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

[60] *Blakley*, 581 F.3d at 406-07.

-11-

physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree

---

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

[67] *Id.*

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

[72] *Id.* at 409-10.

-13-

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

**B.  Application of standards**

This case requires yet another review of an ALJ's treatment of the opinions of various medical sources.

*1.  Exertional limitations*

The first issue, related to exertional limitations, challenges the finding of capability for medium work. A consulting examining physician, Dr. Paras, opined that DeHaven had the capability for sedentary work.[76] The state agency reviewing physician, Dr. Albert, opined

---

[73] *Id.* at 410.

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[75] *Id.* at 940.

[76] Tr. at 910-11.

that DeHaven had the capability for light work.[77] Dr. Albert's opinion was affirmed by Dr. Perencevich.[78]

By finding DeHaven capable of medium work, the ALJ discounted all of these opinions. He gave less weight to Dr. Paras's opinion because of range of motion test results reported therein and reliance on DeHaven's subjective complaints.[79] He dismissed the opinions of Drs. Albert and Perencevich with the cursory conclusion that they were not supported by objective medical evidence.[80]

DeHaven heavily relies upon my decision in *Deskin v. Commissioner of Social Security*.[81] Based on *Deskin*, he argues that the ALJ "played doctor" and interpreted raw medical data. This is not a "pure" *Deskin* case, however. In *Deskin*, the ALJ made a residual functional capacity finding based on a record that contained no acceptable medical source opinion for several critical years in the relevant time period, despite substantial medical records generated during that time period. Here, however, the transcript contains three acceptable medical source opinions covering the relevant time period, which the ALJ discounted in adopting a lesser exertional limitation. As I stated in *Kizys v. Commissioner*

---

[77] *Id.* at 916-23.

[78] *Id.* at 1133.

[79] *Id.* at 20.

[80] *Id.*

[81] *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d  908 (6th Cir. 2008).

*of Social Security*,[82] the ALJ may use medical source opinions "as a guide to peg a residual functional capacity finding" less restrictive than that opined by the sources provided that the ALJ gives good reasons for doing so as required by the regulations.[83]

It is arguable that the ALJ did enough with respect to Dr. Paras's opinion of a limitation to sedentary work based on range of motion examination results and reliance on subjective complaints. The rejection of the opinions of Drs. Albert and Perencevich limiting DeHaven to light work cannot be as easily defended. The ALJ gave as reason for assigning less weight "not supported by objective medical evidence."[84] He does not elaborate on what this objective medical evidence consists of.

Counsel for the Commissioner attempts to support the ALJ's adoption of a less restrictive exertional RFC on the credibility finding. DeHaven specifically states that he is not challenging the credibility finding. Other than discussion of the inconsistency and unreliability of some of DeHaven's representations about his sexual activity, part-time work, and alcohol and tobacco consumption, the ALJ points to x-rays taken in 2007 showing only minimal degenerative change and a report that in 2010 he walked three miles to get to a medical center. This is not sufficient analysis and articulation to discount the opinions of the acceptable medical sources and adopt a less restrictive exertional RFC.

---

[82] *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011).

[83] *Id.*, at *2.

[84] Tr. at 20.

-16-

2.      *Mental limitations – the weighing of the opinions of the acceptable medical sources*

As to the ALJ's treatment of the opinions from two treating sources – Pamela Zalewski, M.D. and Laura Yahney, Ph.D. – DeHaven maintains that the ALJ's failure to assign a clear weight to Dr. Zalewski's opinion, and failure to articulate good reasons for discounting the two opinions, should result in a remand.[85] The Commissioner contends that the ALJ was justified in giving less weight to these sources because, read as a whole, the opinions "were not supported by [DeHaven's] objective evidence of record."[86] Specifically, the Commissioner maintains that the ALJ reasonably gave less weight to these opinions because of the "absence of rationale" for Dr. Yahney's opinion and because of the "lack of corroborating treatment notes" from Dr. Zalewski.[87]

As to Dr. Yahney, there is some uncertainty as to whether the ALJ even acknowledged Dr. Yahney as a treating source, referring to her in the opinion as "an evaluating psychological consultant."[88] In fact, as the Commissioner acknowledges, DeHaven's "most consistent adherence to treatment was 20 bi-monthly sessions of supportive psychotherapy with Laura Yahney, Ph.D., from April 2009 to July 2010, ending when she was no longer a VA provider. Records indicate they addressed coping skills, interpersonal boundaries with family, assertiveness skills, and noting [sic] triggers to

---

[85] ECF # 20 at 9.

[86] ECF # 22 at 14 (citing transcript at 20).

[87] *Id.* at 15.

[88] Tr. at 20.

-17-

substance abuse relapse."[89] Plainly, as the Commissioner's recitation of the record establishes, Dr. Yahney was a treating source of long standing, who had a significant history with DeHaven.

It is on that foundation of nearly a year of regularly treating DeHaven, that Dr. Yahney in February, 2010, gave her opinion in answers to a questionnaire that explicitly states "is designed to amplify your records (and narrative report, if any)" by "vocationally quantifying" how the claimant's mental condition "would impact on the claimant being on task in an 8 hour workday."[90] In other word, by its own stated terms, the questionnaire presupposes the existence of supporting records, but seeks to "amplify" those records by obtaining an answer as to how those conditions would translate into vocational limitations. To now contend, as did the ALJ, that the particular work-related limitations set forth by Dr. Yahney should be discounted or dismissed because they came without a supporting rationale is to ignore the basic structure of the questionnaire itself and penalize Dr. Yahney for not providing something the questionnaire never asked for and indeed fairly specifically stated was assumed to already exist.

Taken together, it is obvious that the ALJ was clearly mistaken in not recognizing Dr. Yahney as a treating source and so analyzing her opinion according to applicable standards. Further, by citing reasons for rejection that are contradicted by the plain language

---

[89] ECF # 22 at 8.

[90] Tr. at 1136.

-18-

of the opinion document itself and take no account of the extensive treatment history extending over a year of twice-a-month therapy, the ALJ did not provide "good reasons" for his discounting of the weight given to this opinion. Nor does this analysis fit within any of the recognized harmless error categories cited above that might excuse the multiple mistakes detailed here. As such, these factors provide a basis for remanding the matter for further consideration.

Similarly, the ALJ's giving greater weight to the opinions of the state agency psychological consultants, Vicki Casterline, Ph.D. and Douglas Pawlarcyzk, Ph.D., as contrasted with the weight given to treating physician Pamela Zalewski, M.D., also provides grounds for a remand. In particular, the ALJ gave "less weight" to that portion of Dr. Zalewski's opinion concerning "various limitations and missing work," because it was "not substantiated by Dr. Zalewski."[91] By contrast, the ALJ gave "more weight" to Casterline's opinion, which was affirmed by Dr. Pawlarcyzk, that DeHaven has only "mild" restrictions as to functions of daily life and "moderate difficulties" in maintaining concentration, persistence or pace.[92]

As DeHaven notes, a significant issue arises here in that the two consulting sources gave their higher-weighted opinions in July, 2009 (Casterline)[93] and January, 2010

---

[91] *Id.* at 20.

[92] *Id.* at 19-20.

[93] *Id.* at 627-30.

(Pawlarcyzk),[94] while the lesser-weighted treating source opinions by Dr. Yahney (February, 2010)[95] and Zalewski (April, 2011)[96] were done later, and so could not have been considered by the reviewing sources.

The Sixth Circuit teaches that where the ALJ adopts the RFC opinion of a non-examining source over the limitations set out by an examining one, particularly where the ALJ's opinion gives no indication that he has "at least considered" the fact that the non-examining source has not reviewed the entire record, the matter should be remanded.[97] Because there is also no indication here that the ALJ considered that the reviewing source opinions given "more weight" were based on review of a record lacking the reports of two treating sources, the matter should be remanded so that any greater weight given to reviewing sources over treating ones can be well-justified and articulated.

**3.      *Mental limitations and moderate difficulties with concentration, persistence, or pace***

The third issue, which relies upon the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*,[98] has its foundation in the ALJ's finding of moderate

---

[94] *Id.* at 1133.

[95] *Id.* at 1136-37.

[96] *Id.* at 1241-42.

[97] *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (citing *Blakley*, 581 F.3d at 409).

[98] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

difficulties in concentration, persistence, or pace at step three.[99] The RFC includes no limitations for stress or production quotas. If the opinions of the treating sources are given greater weight, there may be a basis for including such limitations in the RFC. As discussed in earlier opinions, *Ealy* does not automatically require limitations on stress and production quotas if the ALJ finds at step three that there are moderate difficulties in concentration, persistence, or pace.[100] There must be something more in the transcript or in the ALJ's findings to justify limitations beyond unskilled work.[101] There is no bright line, however, and what additional limitations, if any, should appear in the RFC must be decided on a case-by-case basis.[102] Because of the remand to evaluate the opinions of the acceptable medical sources as discussed above, I note the *Ealy* problem and direct reconsideration of additional mental limitations in light of the weight assigned on remand to those acceptable medical sources.[103]

## Conclusion

Substantial evidence does not support the finding of the Commissioner that DeHaven had no disability. Accordingly, the decision of the Commissioner denying DeHaven

---

[99] Tr. at 16.

[100] *Smith v. Colvin*, No. 1:12 CV 2165, 2013 WL 4431244, at *4 (N.D. Ohio Aug. 16, 2013).

[101] *Id.*

[102] *Id.*

[103] *Id.* at *6.

disability insurance benefits and supplemental security income is reversed and the matter

remanded for further proceedings consistent with this opinion.

      IT IS SO ORDERED.


Dated: March 7, 2014                         s/ William H. Baughman, Jr.
                                      United States Magistrate Judge